UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONALD A. PROUT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:14-cv-00486-SEB-DKL |
| ) | |
| MARION COUNTY SHERIFF'S ) | |
| DEPARTMENT, ) | |
| MICHAEL HUBBS, ) | |
| WAYNE SHARP, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court on the parties' cross motions for summary judgment. On March 28, 2014, Plaintiff Donald Prout filed suit against Defendants Michael Hubbs, Wayne Sharp, and the Marion County Sheriff's Department alleging unreasonable seizure, in violation of the Fourth Amendment, as well as negligence, false arrest, malicious prosecution, defamation, and intentional infliction of emotional distress, in violation of Indiana common law. Dkt. 1 ¶¶ 35–37. On May 1, 2015, Plaintiff filed a motion for summary judgment seeking judgment on a theory of *res judicata*. [Docket No. 43]. That same day, Defendants filed a motion for summary judgment based on the defenses of probable cause for the arrest at issue and qualified immunity. [Docket No. 41]. For the reasons detailed herein, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

**Factual Background**

Plaintiff Donald Prout served as a deputy with the Marion County Sheriff's Department from January 2006 until March 2012. Dkt. 41-3 at 19. To supplement his income, Dep. Prout also worked as a part-time security officer for Kroger, Greyhound Bus, and an apartment complex located on Indiana Avenue in Indianapolis. *Id.* at 25. On January 29, 2012, a student living in that apartment complex reported to the Indiana Metro Police Department that Dep. Prout had raped her. Dkt. 41-1. Det. Daniel Smith of the IMPD Sex Offense Unit launched an investigation into the claim which was concluded after the student ceased cooperating with law enforcement. *Id.* at 9.

Det. Smith passed along the information he had obtained in his investigation Internal Affairs Captain Michael Hubbs, who, with Col. Byron Grandy, thereafter, informed Lt. Wayne Sharp, an investigator in the internal criminal investigations unit, of the investigation of Dep. Prout for the alleged rape, and the subsequent termination of the investigation prior to any charges being preferred or an arrest. Sharp Dep. 19:12–21:4. They further informed Sharp of possible discrepancies in Dep. Prout's timekeeping records regarding his part-time employment, which warranted further investigation as "ghost employment." *Id.*

Lt. Sharp uncovered, through his investigation, four discrepancies in Dep. Prout's timecards: he had clocked-in to work for the Sherriff's Department at the same time as he

had clocked-in to work at one of his part-time jobs.[1] After discovering these discrepancies, when Lt. Sharp attempted to speak with him about his timekeeping, Dep. Prout declined to be interviewed. Dkt. 41-3 at 190–91. Lt. Sharp prepared an Affidavit of Probable Cause averring that Dep. Prout had received double-pay and was thus engaged in unlawful "ghost employment," in violation of Indiana Code § 35-43-4-2. Dkt. 41-10. Lt. Sharp presented the affidavit to Capt. Hubbs for review, after which it was attached to a charging information and filed with the Marion Superior Court. A warrant ensued for Dep. Prout's arrest. *Id.* On April 4, 2012, three days after being terminated from his employment with the Sherriff's Department, Dep. Prout was arrested and booked in the Marion County Jail on charges of ghost employment. Sharp Dep. Ex. 3; Hubbs Dep. at 86.

Shortly thereafter, a number of Dep. Prout's former colleagues contacted Lt. Sharp to report that Dep. Prout had attended a training session on October 27, 2011 and thus had not received double-pay for that day. Dkt. 41-3 at 207–08. The training session had been a monthly "STAR Team" program that certain officers are permitted to attend in place of working their normal shifts. Dkt. 41-3 at 20–25. Thus, although his timecards did not reflect it, Dep. Prout was entitled to and did attend the training session, which extended over that work day from 8:00 a.m. until 4:00 p.m., after which he worked a shift

---

[1] The timecards from October 27, 2011 showed that Prout was clocked-in to work for the Sherriff's Department from 3:00 p.m. to 11:00 p.m. and was also clocked-in to work as a security officer for Kroger from 4:53 p.m. to 12:02 a.m. Dkts. 41-4, 41-7. The time cards from February 6, 7, and 27, 2012 each showed that Deputy Prout had clocked-in at the Sherriff's Department at 3:00 p.m. but remained clocked in as a security officer with Greyhound Bus until 4:00 p.m. Dkts. 41-5, 41-6, 41-8, 41-9.

at Kroger from 4:53 p.m. to 12:02 a.m. *Id.* Several STAR Team members also spoke with Lt. Sharp and Capt. Hubbs to confirm Dep. Prout's attendance at the training session and to reminded Capt. Hubbs, who had attended the training himself, that he had, in fact, spoken to Dep. Prout during that session. Hubbs Dep. at 80; Sharp Dep. at 28. The one-hour overlaps on Dep. Prout's timecards for February 6, 7, and 27, 2012 were also eventually explained by Dep. Prout's supervisor at Greyhound Bus, who reported that Prout's practice was to leave his shifts at Greyhound early in order to report for work as a deputy, which time he would make up at some later date without revising his timecards. Dkts. 41-3, 41-8. Presumably on the basis of this post arrest information, the prosecutor responsible for the case dismissed the charges against Dep. Prout citing "Evidentiary Problems." Dkt. 41-11.

Following the dismissal of this case, Dep. Prout filed a Verified Petition for Expungement in the Marion Superior Court. Dkt. 41-13. The court held an evidentiary hearing on the petition and, on March 19, 2013, granted the requested expungement, concluding "that there was no offense actually committed by Donald Prout and that there was no probable cause for the issuance of the warrant and the prosecution of theft against Donald A. Prout." Dkt. 41-13. The IMPD appealed the order to the Indiana Court of Appeals. *See Indiana Metropolitan Police Department v. Prout*, 10 N.E.3d 560 (Ind. Ct. App. 2014), *trans. denied*, 23 N.E.3d 680 (Ind. 2015). In its decision, the Court of Appeals found sufficient evidence to support the trial court's finding that no crime had

actually been committed, but explicitly declined to opine on the trial court's finding of probable cause. *Id.* at 567 n.4.

On March 28, 2014, Dep. Prout filed suit against Defendants Michael Hubbs, Wayne Sharp and the Marion County Sheriff's Department alleging unreasonable seizure in violation of the Fourth Amendment of the United States Constitution as well as negligence, false arrest, malicious prosecution, defamation, and intentional infliction of emotional. Dkt. 1 at ¶¶ 35–37. On May 5, 2015, the parties filed cross-motions for summary judgment. Dkts. 41, 43.

## Legal Standard

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted when the evidence establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the

5

parties," *id.*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Courts often confront cross motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *Kohl v. Ass'n. of Trial Lawyers of Am.*, 183 F.R.D. 475 (D. Md. 1998). Here, the Court has considered the parties' respective memoranda and the exhibits attached thereto and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective nonmovant. *Matsushita,* 475 U.S. at 574. The parties before us, by filing cross motions, stipulate that there are no material facts in controversy and that their dispute is ripe for decision on summary judgment.

## Discussion

Plaintiff argues in his Motion for Summary Judgment that he is entitled to have the issue of probable cause resolved in his favor under the doctrine of *res judicata*. Dkt. 43. Defendants argue in their Motion for Summary Judgment that they are entitled to judgment in their favor because probable cause existed for Dep. Prout's arrest and because in any event, the individual Defendants are entitled to qualified immunity. Dkt. 41. We address each of these contentions below.

## I. Plaintiff's Claim for Issue Preclusion

The doctrine of *res judicata* embraces two forms: claim preclusion and issue preclusion. *Biggs v. Marsh,* 446 N.E.2d 977, 981 (Ind. Ct. App. 1983). Claim preclusion applies where there has been a final judgment on the merits and acts as a complete bar to a subsequent action on the same claim between the same parties and their privies. *Kieler v. C.A.T. by Trammel,* 616 N.E.2d 34, 36 (Ind. Ct. App. 1993), *trans. denied.* When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. *Id.*

Issue preclusion, often referred to as collateral estoppel, bars the subsequent relitigation of a fact or issue where it was necessarily adjudicated in a former suit. *Kieler,* 616 N.E.2d at 36; *Sullivan v. American Casualty Co. of Reading, Pa.,* 605 N.E.2d 134, 137 (Ind. 1992). When issue preclusion applies only those issues that were actually litigated and necessary to the result of the former adjudication are deemed conclusively decided. *Id.*; *Wedel v. American Elec. Power Serv. Corp.,* 681 N.E.2d 1122, 1131 (Ind. Ct. App. 1997), *trans. denied; Pritchett v. Heil,* 756 N.E.2d 561, 565 (Ind. Ct. App. 2001).

Dep. Prout contends that the Marion Superior Court's order granting his petition for expungement conclusively decided the issue of probable cause relating to his arrest. The court's order was based on Indiana Code § 35-38-5-1, which provides that "whenever all criminal charges filed against an individual are dropped because: (A) of a mistaken identity; (B) no offense was in fact committed; or (C) there was an absence of

7

probable cause; the individual may petition the court for expungement of the records related to the arrest." In its order, the Superior Court ruled that no probable cause existed at the time the charges were filed against Dep. Prout or at the time the charges were dismissed, and that no offense was actually committed. Dkt. 41-13. The Court of Appeals affirmed this decision, holding that sufficient evidence supported the trial court's finding that Dep. Prout did not commit the theft for which he had been arrested. *See IMPD v. Prout*, 10 N.E.3d 560 (Ind. Ct. App. 2014). That ruling, according to Dep. Prout, by affirming the trial court's decision, resolves the issue of probable cause.

"[T]he general view is that if an appellate court affirms on one ground and disregards a second, there is no issue preclusion as to the unreviewed ground, the second ground no longer being conclusively established." *Wedel v. Am. Elec. Power Serv. Corp.*, 681 N.E.2d 1122, 1139 n. 8 (Ind. Ct. App. 1997) (citing *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 45 (2d Cir. 1986), *cert. denied; Martin v. Henley,* 452 F.2d 295, 300 (9th Cir. 1971)). Thus, for issue preclusion to apply, the fact or issue sought to be barred must have been "necessarily adjudicated" in the former litigation. *See Kieler,* 616 N.E.2d at 36. Given that the appellate court here affirmed the trial court's ruling on grounds other than a lack of probable cause and expressed no opinion on the findings related to probable cause, issue preclusion does not apply in this case. Accordingly, Plaintiff's Motion for Summary Judgment on that matter is **DENIED**.

## II. Plaintiff's Fourth Amendment Claim

Dep. Prout has framed this action as a 42 U.S.C. § 1983 claim, alleging that Defendants violated his Fourth Amendment rights when they falsely arrested him on charges of ghost employment. Dkt. 1. Defendants maintain that they are entitled to summary judgment because they possessed probable cause to arrest Deputy Prout, which is an absolute defense to any Section 1983 claim for wrongful arrest, false imprisonment, or malicious prosecution. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).

Whether probable cause existed at the time of arrest is a question of fact typically within the province of the jury, s*ee Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 473 (7th Cir. 1997). However, Defendants claim they are entitled to summary judgment based on a theory of qualified immunity, which presents a question of law for the Court to decide. *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982). Once an officer raises the defense of qualified immunity, the plaintiff bears the burden of establishing that the right he claims was violated was "clearly established" at the time the officers took action. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). To show that the right was "clearly established," the plaintiff must either (1) cite a closely analogous case establishing a right to be free from the specific conduct at issue; or (2) show that the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008). The court must then determine "whether a reasonable police officer could have believed the conduct was constitutional, in light of clearly established law and the

9

information he possessed at the time." *Lanigan*, 110 F.3d at 472 (quoting *Frazell v. Flanigan*, 102 F.3d 877, 886 (7th Cir. 1996)). Further, with regard to probable cause, "an officer is entitled to qualified immunity if a reasonable officer could have mistakenly believed that probable cause existed" based on the clearly established law at the time of his actions. *Burritt v. Ditlefsen*, 2015 WL 7729409, at *9 (7th Cir. Nov. 30, 2015). This is often referred to as "arguable probable cause," the determination of which should be made separately and distinctly from a determination of actual probable cause. *See id* at *9.

To determine whether a reasonable officer could have mistakenly believed probable cause existed at the time of arrest, we look to the clearly established tenants of probable cause jurisprudence. "Probable cause exists if, at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." *Stokes v. Board of Educ. Of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010). The inquiry into whether probable cause exists is objective and requires only a probability or reasonable chance of criminal activity; the evidence need not show that the officer's belief was more likely true than false. *Purvis v. Oest,* 614 F.3d 713, 722–23 (7th Cir. 2010); *see also Nelson v. Vill. of Lisle, Ill.*, 437 F. App'x 490, 493 (7th Cir. 2011) ("probable cause to arrest requires no more than a reasonable chance—less than a 50 percent likelihood can be sufficient—that a crime occurred and the suspect committed it."). The court evaluates probable cause "not on the facts as an

omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).

At the time of Dep. Prout's arrest, Lt. Sharp possessed official time cards signed by Dep. Prout and his supervisor that established that on four occasions Dep. Prout had clocked-in to work for both the Sheriff's Department and a private employer at the same time. Dkts. 41-4 – 41-9. The parties do not dispute that this evidence, taken by itself, would suffice in terms of providing probable cause.[2] Instead, Plaintiff contends that at the time of his arrest, Lt. Sharp and Capt. Hubbs also possessed substantial evidence establishing that he did not receive double pay for the dates in question, which contrary evidence Defendants chose to ignore in deciding to arrest him on the charges of ghost employment. Dkt. 51 at 10. He argues that: "Had Hubbs and Sharp made reasonable inquiries, they could easily have resolved [any] contradiction [in the evidence] and verified when and where Prout actually worked." Dkt. 51 at 14.

The question before us, then, is whether a reasonable officer would have believed, even by mistake, that probable cause existed based on the information Defendants possessed at the time of Dep. Prout's arrest, or whether Defendants were obligated to conduct further inquiries into Dep. Prout's work schedule before making an arrest.

---

[2] Indeed, Lt. Sharp submitted an Affidavit of Probable Cause to the Marion Superior Court based on these facts that led the court to issue a warrant for the arrest of Donald Prout. See Dkt. 41-10.

Applicable case law clearly establishes that once a police officer discovers sufficient facts to establish probable cause, he has no obligation to conduct any further investigation in the hope of discovering exculpatory evidence. *See Burritt v. Ditlefsen*, 2015 WL 7729409, at *10 (7th Cir. Nov. 30, 2015); *Huon v. Mudge*, 597 F. App'x 868, 875 (7th Cir. 2015) (collecting cases); *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 624-25 (7th Cir. 2010) (collecting cases). At the same time, if an officer is aware of conclusively established evidence of an affirmative defense which defeats probable cause, he may not "close his eyes" to that evidence. *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004); *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). As the Seventh Circuit has explained, these cases establish that "investigating officers cannot ignore what they dig up, [but]…the Fourth Amendment lets them stop digging when they uncover information yielding probable cause." *Nelson v. Vill. of Lisle, Ill.*, 437 F. App'x 490, 494 (7th Cir. 2011).

Here, Plaintiff contends that Lt. Sharp knew Dep. Prout was scheduled to attend the STAR Team training on October 27, 2011 rather than work his normal 3:00 p.m. to 11:00 p.m. shift and knew that Dep. Prout's Computer Aided Dispatch ("CAD") records were inconsistent with the official timecard for that day. Sharp Dep. 52:19–57:4, 99:12–101:18. Specifically, Plaintiff maintains that Lt. Sharp had read Dep. Prout's CAD records from October 27th showing that Dep. Prout marked "on duty" at 7:49 a.m. at the Post Road training facility, marked "out of vehicle" at 4:48 p.m., marked "in-service" at 5:52 p.m., and marked "off duty" at 5:37 a.m. on October 28th. See Dkt. 52-2 at 8. These

records are clearly inconsistent with Dep. Prout's official timecard, which indicated that he worked the 3:00 p.m. to 11:00 p.m. shift for the Sherriff's Department and an overlapping 4:53 p.m. to 12:02 a.m. shift for Kroger. Dkts. 41-1, 41-7. According to Dep. Prout, these inconsistencies should have alerted Lt. Sharp to a possible explanation for the alleged double pay and prompted him to attempt to verify which of the documents reflected his actual work schedule. Dkt. 51 at 12.

While we are unsure that inconsistent CAD records, which appear to be inaccurate in and of themselves, "conclusively establish" an affirmative defense in this case, the record reveals that Lt. Sharp did not simply ignore the inconsistencies, but in fact attempted to speak with Dep. Prout to understand or resolve the apparent discrepancies in his timekeeping records. Dkt. 41-3 at 190–91. Although Dep. Prout concedes that he refused to speak with Lt. Sharp, he maintains that Lt. Sharp should have interviewed other STAR Team members to determine when and where Dep. Prout actually worked, rather than relying entirely on the official timecards in his possession. See Dkt. 51 at 15. This argument that Lt. Sharp should have done more or gone further in his investigation, despite possessing official timecards signed by Dep. Prout showing hours of double pay, has been repeatedly rejected by the Seventh Circuit. "[O]nce an officer learns sufficient trustworthy information establishing probable cause, he is entitled to rely on what he knows in pursuing charges or an arrest, and is under no further duty to investigate." *Beauchamp v. City of Noblesville, Ind.,* 320 F.3d 733, 744 (7th Cir.2003); *see also Stokes,* 599 F.3d at 624 ("Fourth Amendment does not require an officer with probable cause to

arrest to wait while pursuing further investigation"). Moreover, Lt. Sharp's decision to rely on the official timecards in his investigation, even if mistaken, was not objectively unreasonable. As he testified, the official timecards require the verification and approval of both the employee and a supervisor before they are submitted. Dkt. 41-3 at 96–97, 187–88, 205, 211. The CAD records, on the other hand, allow officers to self-report from any location without any oversight or mechanism to confirm their accuracy. *Id.* It was Lt. Sharp's judgment, therefore, that the CAD records were a less reliable indicator of Dep. Prout's schedule than the official timecards he possessed. Sharp Dep. 53:2–18. An officer may base a determination of probable cause on information from a single putative victim or eyewitness, if the officer reasonably believes that the victim is telling the truth. *McBride,* 576 F.3d at 707; *Woods v. City of Chicago,* 234 F.3d 979, 996 (7th Cir. 2000). Likewise, Lt. Sharp was entitled to base his decision of probable cause on information from the signed official timecards, given his reasonable belief in their accuracy. *Id.*

The fact that it was later revealed that Dep. Prout's actual work schedule did not match his verified timecards is immaterial. Likewise, the dismissal of the criminal charges and the expungement of the arrest record have no relevance to the determination of arguable probable cause at the time of his arrest. *See Burritt v. Ditlefsen*, 2015 WL 7729409, at *8 (7th Cir. Nov. 30, 2015). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Eversole v. Steele*, 59 F.3d 710, 717-18 (7th Cir. 1995) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229 (1991)). Given our unwillingness to find

that Lt. Sharp's investigation was plainly incompetent or a knowing violation of the law, he is entitled to qualified immunity on Dep. Prout's § 1983 claim.

Plaintiff also claims that Capt. Hubbs violated his Fourth Amendment rights because he reviewed Lt. Sharp's Affidavit of Probable Cause before it was filed and "allowed Prout's arrest to proceed." Dkt. 51 at 11. Plaintiff argues that Capt. Hubbs should have known that the allegations in Lt. Sharp's affidavit were incorrect because Hubbs had briefly attended the STAR Team training on October 27, 2011 where Dep. Prout was in attendance. *Id.* Prout contends that when Capt. Hubbs saw "October 27, 2012 (sic)," listed as a day when Prout received double pay per the affidavit, he should have recalled seeing Dep. Prout at the training session and informed Lt. Sharp. *Id.*

It is unclear whether plaintiff means to put this allegation forward as a "failure to intervene" claim, or whether he is claiming that Capt. Hubb's attendance at the October 27, 2011 training vitiated any probable cause for Dep. Prout's arrest. Under either theory, Plaintiff's attempt falls short of the required mark.

An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983, if that officer *had reason to know* that a constitutional violation was being committed, had a realistic opportunity to intervene to prevent the harm from occurring, and failed to intervene. *Chavez v. Illinois State Police*, 251 F.3d 612, 651–52 (7th Cir. 2001). Probable cause is destroyed when an officer knows of evidence conclusively establishing

an affirmative defense and *chooses to ignore* it. *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). Plaintiff has provided no evidence that at the time Capt. Hubbs reviewed Lt. Sharp's affidavit he had reason to know that a constitutional violation was being committed and failed to intervene, or that he knew of evidence conclusively establishing an affirmative defense but chose to ignore it. The evidence before us reveals that when Capt. Hubbs reviewed the affidavit, he did so only to correct grammatical errors, leaving its substance untouched. Hubbs Dep. 59:2–12. He has also testified repeatedly that, although he recalled briefly attending a STAR Team training sometime in October 2011, he did not recall the date of that training session. Dkt. 41-3 at 139, 140, 144; Hubbs Dep. 58. It was not until after the arrest that Dep. Prout's STAR teammates came forward to remind Capt. Hubbs of his attendance at the training and notify him of its date. Hubbs Dep. at 80.

Qualified immunity shields a police officer from § 1983 liability if "a reasonable officer could have believed [the plaintiff's arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Eversole v. Steele*, 59 F.3d 710, 717-18 (7th Cir. 1995) (quoting *Hunter,* 502 U.S. at 227). Given the inclusion in Lt. Sharp's affidavit of allegations of double-pay on four separate occasions, which Capt. Hubbs reviewed some four to six months after the October 27th training session, and given that Capt. Hubbs's visit to the training session extended over less than an hour's time, his failure to recall his encounter with Dep. Prout on that specific date is not unreasonable, at least no so as to destroy arguable probable cause in this case. "If a

case involves a question of whether probable cause existed to support an officer's actions, the case should not be permitted to go to trial if there is any reasonable basis to conclude that probable cause existed." *Id.* (internal quote omitted). Absent some other evidence that Capt. Hubbs knew Lt. Sharp's affidavit was erroneous when he reviewed it and chose to let the arrest go forward in spite of that knowledge, Capt. Hubbs is also entitled to immunity and to summary judgment on Prout's § 1983 claim.

### III.   Plaintiff's State Law Claims

Dep. Prout has also asserted state-law claims of negligence, false arrest, malicious prosecution, defamation, and intentional infliction emotional distress. Dkt. 1 at ¶ 36. Defendants have argued, and Prout has not refuted, that all of the state law claims against the individual officers are barred by Indiana Code § 34–13–3–5, which prohibits claims against individual government employees where those employees were acting within the scope of their employment. Additionally, the Indiana Tort Claims Act provides total immunity to law enforcement entities from liability for losses resulting from the "initiation of a judicial ... proceeding," I.C. § 34–13–3–3(6), or "[t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment," *id.* § 34–13–3–3(8). This means that Dep. Prout cannot recover under Indiana law for his state law claims of malicious prosecution, defamation, or intentional infliction of emotional distress. *See Snider v. Pekny*, 899 F. Supp. 2d 798, 818–19 (N.D. Ind. 2012) (collecting cases).

The sole remaining claim is Dep. Prout's state-law claim of false arrest brought against the Marion County Sherriff's Department. Generally, to succeed on a claim of false arrest or false imprisonment, Indiana law requires a plaintiff to establish the absence of probable cause for the arrest. *Brown v. City of Fort Wayne*, 752 F. Supp. 2d 925, 956 (N.D. Ind. 2010) (citing *Garrett v. City of Bloomington,* 478 N.E.2d 89, 93 (1985)). The plaintiff must also demonstrate that the officer(s) did not act in good faith when making the arrest; a standard less stringent than that of probable cause. *Id.*; *see also McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1104 (S.D. Ind. 2008). In other words, "a police officer cannot be held liable for false arrest if 'the officer believed in good faith that the arrest was made with probable cause and that such belief was reasonable.' " *Brown*, 752 F. Supp. 2d at 956 (N.D. Ind. 2010) (quoting *Garrett,* 478 N.E.2d at 93).

The doctrine of qualified immunity applies only to Dep. Prout's false arrest claim under 42 U.S.C. § 1983; thus, the Sherriff's Department is not shielded from this common law counterpart. *Brown v. City of Fort Wayne*, 752 F. Supp. 2d 925, 956 (N.D. Ind. 2010)(citing *Magdziak v. Byrd,* 96 F.3d 1045, 1048 (7th Cir.1996)). Determinations of good-faith and probable cause "must made by a jury, 'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.' " *Chelios,* 520 F.3d at 686 (quoting *Maxwell,* 998 F.2d at 434); *see also Duvall v. Kroger Co.,* 549 N.E.2d 403, 405–06 (Ind. Ct. App. 1990) ("Probable cause is normally an issue for the jury's determination. However, if the facts are undisputed, probable cause is for the court to determine as a matter of law.").

As evidenced by the Marion Superior Court's divergent orders regarding this issue, there is clearly room for a difference of opinion concerning the facts and inferences to be drawn regarding probable cause for Dep. Prout's arrest. Likewise, construing the facts in the light most favorable to Plaintiff, a reasonable jury could find that the investigation into Dep. Prout was initiated out of frustration arising from his having not been prosecuted for the alleged rape and that is was thus carried-out in bad faith. See Sharp Dep. 20–21; Allen Dep. at 12–13. Because these questions, unlike those of qualified immunity, are issues of fact for the jury to decide, we must deny Defendants' motion for summary judgment on Dep. Prout's state-law claim for false arrest.

### Conclusion

For the reasons stated herein, we hereby **DENY** Plaintiff's Motion for Summary Judgment [Docket No. 43], **GRANT in part** Defendants' Motion for Summary Judgment [Docket No. 41] as it relates Plaintiff's Fourth Amendment claims brought pursuant to 42 U.S.C. § 1983, as well as his state-law claims of defamation, malicious prosecution, and intentional infliction of emotional distress. We **DENY in part** Defendants' Motion for Summary Judgment [Docket No. 41] as it relates to Plaintiff's claim of false arrest under Indiana law.

IT IS SO ORDERED.

1/11/2016

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@btlmlaw.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Sarah Steele Riordan
FROST BROWN TODD LLC
sriordan@fbtlaw.com

Pamela G. Schneeman
OFFICE OF CORPORATION COUNSEL
pamela.schneeman@indy.gov

Amanda J. Dinges
OFFICE OF CORPORATION COUNSEL
amanda.dinges@indy.gov